IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 05 C 2193 |
| | ) |
| UNION PACIFIC RAILROAD, | ) |
| TRANSPORTATION COMMUNICATIONS | ) |
| UNION, RAILROAD ADJUSTMENT BOARD, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff George Mitchell filed a petition seeking review of a decision rendered by a division of the Railroad Adjustment Board (Adjustment Board), which terminated his employment with Union Pacific Railroad (Union Pacific or "railroad") based on its finding that plaintiff claimed unemployment benefits, to which he was not entitled, and other improper conduct. Along with his petition plaintiff has filed a petition to proceed *in forma pauperis*. For the following reasons, plaintiff's petition is dismissed with prejudice, in part and granted in part.

## BACKGROUND

Plaintiff was employed by Union Pacific as an extra board clerk, and in that position it called him when work hours were available, as opposed to providing a set work schedule. On August 29, 2002, plaintiff applied for unemployment benefits from the Railroad Retirement Board (Retirement Board), and was approved to receive those benefits, despite the fact that he was a full-time Union Pacific employee. Plaintiff believed that he was entitled to receive unemployment benefits because Union Pacific allegedly did not pay his guaranteed

salary, to which he claims he was entitled. After discovering that plaintiff claimed and received unemployment benefits as a full-time employee, Union Pacific charged him with violating Rule 1.6 of its General Code of Operating Rules (operating rules), which states that "employees must not ... be insubordinate, dishonest, immoral or quarrelsome." On June 19, 2003, the railroad held an investigative hearing, which plaintiff attended, represented by members of the Transportation-Communications Union (Union). After the hearing, Union Pacific concluded that plaintiff violated Rule 1.6 and then dismissed him from his position.

Plaintiff then filed a wrongful termination action against Union Pacific, which this court dismissed because the Railway Labor Act (Act) required plaintiff to advance his claim through an internal administrative appeals process. Availing himself of that process, plaintiff submitted his claim before a Public Law Board (Law Board or Board). And, on August 16, 2004, the Board denied plaintiff's claim, concluding that there was "overwhelming evidence" to support the railroad's charge that plaintiff made himself unavailable for work assignments by missing numerous phone calls and then "claim[ing] unemployment benefits to offset his numerous absences and loss of wages ... [when he] should not have claimed unemployment benefits at all." Plaintiff now appeals the Board's findings and its endorsement of his dismissal.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915(a) we may authorize plaintiff to proceed *in forma pauperis* if he demonstrates an inability to pay the required costs and fees. On April 13, 2005, plaintiff filed a financial affidavit, but, being incomplete, it was dismissed without prejudice. Plaintiff then filed a second financial affidavit, and in it he asserts that he was last employed on June 8, 2003, at which time his monthly salary was $420. Plaintiff also discloses that within the past

twelve months he has received $3,120 in unemployment benefits. In his first financial affidavit plaintiff stated that he had $54.65 in a bank account and $2,900 of personal property, but these assets apparently no longer exist as plaintiff does not include them in his current financial affidavit. Plaintiff has sufficiently cured the deficiencies in the April 13 affidavit and has made the requisite showing of financial need.

However, the inquiry does not end with that finding of indigence. As part of the initial review of a petition to proceed *in forma pauperis*, we analyze plaintiff's claims and dismiss the complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); Alston v Debruyn, 13 F.3d 1036, 1039 (7th Cir. 1994). Determining if the complaint fails to state a claim invokes the familiar standard from FED. R. CIV. P. 12(b)(6), under which the court accepts all well-pleaded facts as true and draws all reasonable inferences in plaintiff's favor. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Further, a complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Complaints by *pro se* parties are held to less stringent standards than pleadings drafted by lawyers (Alvarado v. Itscher, 267 F.3d 648, 651 (7th Cir. 2001)), but a *pro se* complaint must still allege facts that serve as an adequate basis for each claim. Gray v. Dane County, 854 F.2d 179, 182 (7th Cir. 1988).

The Railway Labor Act (Labor Act) "permits federal courts to intervene only in limited circumstances" and "judicial review of board of arbitrators' decision is 'among the narrowest known to law.'" Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999) (quoting Union Pacific R.R. Co. v. Sheehan, 439 U.S. 89, 91 (1978)). A federal court has no

authority to review a Board's findings of fact. Lyons v. Norfolk & Western Ry., 163 F.3d 466, 468 n.1 (7th Cir. 1999); *see also* United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) (courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."). Under section 153 First (q) of the Act, "a federal court has jurisdiction to review the Board's decision only when it is asserted that (1) the Board failed to comply with the requirements of the Railway Labor Act; (2) the Board failed to confine itself to matters within its own jurisdiction; or (3) the Board or one of its members engaged in fraud or corruption." Pokuta, 191 F.3d at 839. "Only upon one or more of these bases may a court set aside an order of the Adjustment Board." Sheehan, 439 U.S. at 93. In addition to the three grounds set forth in section 153 First (q), the Seventh Circuit Court of Appeals has recognized that appeals based on alleged due process violations may be heard by district courts. *See* Pokuta, 191 F.3d at 839 (7th Cir. 1999); Bates v. Baltimore & Ohio R.R. Co., 9 F.3d 29, 31 (7th Cir. 1993); Morin v. Consolidated Rail Corp., 810 F.2d 720, 722 (7th Cir. 1987); Elmore v. Chicago & Ill. Midland Ry. Co., 782 F.2d 94, 96-97 (7th Cir. 1986).

A Public Law Board is "an optional dispute-resolution mechanism" created under the Railway Labor Act (Steffens v. Brotherhood of Ry., 797 F.2d 442, 447 (7th Cir. 1986)), and a party before the Board has "the same opportunities for judicial review that are available to the parties for an Adjustment Board award." United Transp. Union v Indiana H. B. R. Co., 540 F.2d 861, 862 (7th Cir. 1976). Awards made by a Law Board are "final and binding upon both parties to the dispute." 45 U.S.C. § 153(m); Kulavic v. Chicago & Ill. M. Ry. Co., 1 F.3d 507, 513-14 (7th Cir. 1993); *see also* O'Neill v. Public Law Bd. No. 550, 581 F.2d 692, 694 (7th Cir. 1978).

Because the court's jurisdiction depends on the presence of a section 153 First (q) factor (Pokuta, F.3d at 839), the threshold issue of jurisdiction precedes the question of whether plaintiff states a claim. If plaintiff fails to establish jurisdiction under section 153 First (q), then the complaint states no arguable basis for relief and must be dismissed under section 1915(e)(2)(B)(i) as frivolous, due to lack of subject matter jurisdiction.[1] If jurisdiction is absent, then the court cannot proceed to determine the merits in the case and "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also* State of Illinois v. City of Chicago, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further.").

As discussed above, section 153 First (q) is a specific grant of jurisdiction that permits federal courts to review Board decisions if one of three types of error is alleged. Plaintiff claims that the Board committed all three types of error and also violated his due process rights. However, plaintiff's arguments dwell on extraneous topics and events, such as the tangentially related proceedings before the Retirement Board and the disciplinary hearing initiated by the railroad. Our analysis extends only to the Law Board's decision, and we begin with plaintiff's claim that the Board exceeded its jurisdiction.

To prove that the Board exceeded its jurisdiction, plaintiff must show that "the Board's decision is without foundation in reason or fact . . . or wholly baseless and without reason." Anderson v. National R. Passenger Corp., 754 F.2d 202, 203 (7th Cir. 1984). Plaintiff claims

---

[1] Such a dismissal is made with prejudice. *See* Gladney v. Pendleton Corr. Facility, 302 F.3d 773, 775 (7th Cir., 2002).

that the Board was only permitted to examine the collective bargaining agreement and that it acted outside of its jurisdiction because it interpreted the Railroad Unemployment Insurance Act (Insurance Act). Plaintiff cannot point to any portion of the Board's decision that shows it interpreted, or even contemplated, the Insurance Act. The mere fact that the Board considered plaintiff's application for unemployment benefits and other correspondence between plaintiff and Retirement Board officials is not tantamount to interpreting the Insurance Act. Instead, the Board's consideration of those documents established that plaintiff received unemployment benefits, which Union Pacific and the Board concluded was in violation of the operating rules. Plaintiff believes that the Board's finding necessarily undermines the conclusion of a Retirement Board hearing officer, who determined that plaintiff's receipt of unemployment benefits did not constitute an overpayment. The Labor Board was not bound by the Retirement Board's position on plaintiff's eligibility to receive benefits.[2] Further, plaintiff's eligibility to receive benefits is distinct from the propriety of a full-time employee claiming and receiving unemployment payments. The Law Board was not simply concerned with the receipt of unemployment benefits. It noted that plaintiff's propensity for missing calls in order to make himself unavailable for work supported his termination. Here the Board arguably interpreted and applied the operating rules, and the court has no authority to disagree with its conclusions. United Paperworkers Int'l Union, 484 U.S. at 38.

Ultimately, plaintiff cannot show that the decision is without reason or fact, and there is thus no indication that the Board exceeded its jurisdiction. Plaintiff's reference to

---

[2] The Board's decision was made over seven months before the Retirement Board hearing officer rendered his decision.

proceedings before the Retirement Board, Union Pacific's alleged failure to make guaranteed salary payments to him, and his decision to enroll in the railroad's education plan, are all irrelevant to our review of the Board's decision. Since the Board acted within its jurisdiction, its findings are conclusive under section 153 First (q). The court therefore lacks subject matter jurisdiction to hear plaintiff's claim that the Board exceeded the scope of its jurisdiction.

Plaintiff next attempts to establish jurisdiction under section 153(q) by contending that there was fraud or corruption by a member of the Labor Board. Plaintiff contends that the railroad committed fraud by presenting that he had a full-time position and was paid under a salary guarantee, and he cites 20 CFR § 355.1(b)(1) in support of his position. But that regulation refers to the making of fraudulent statements to the Retirement Board, and has nothing to do with the "fraud or corruption by a member" of the Labor Board. Equally irrelevant are the proceedings before the Retirement Board. Plaintiff also believes that his participation in a company-sponsored education program demonstrated Union Pacific's acquiescence to his receipt of unemployment benefits. Not only does this argument fail to shed any light on the issue of fraud or corruption by the Labor Board, it is also mistaken. The railroad clearly communicated to plaintiff that, despite his decision to attend school, he was expected to make himself available to work.[3] Section 153 First (q) does not permit review of the evidence before the Board. *See* Anderson, 754 F.2d at 204 ("the sufficiency of the evidence comprising the foundation of the Board's decision is not reviewable."); Bates, 9 F.3d at 32 (evidentiary disputes are not within the narrow jurisdictional grounds set forth by section

---

[3] In a letter dated September 25, 2001, JoAnne J. Abdallah, a manager at Union Pacific, noted that plaintiff had missed several calls and "strongly suggest[ed]" that he make himself available for work shifts that did not conflict with his school schedule. The railroad expected plaintiff to work, not to claim unemployment benefits.

153(q)). Further, claiming that the Board ignored facts is an "attack on the Board's conclusions," which cannot be maintained under the Railway Labor Act. Steffens, 797 F.2d at 447.

Thus, instead of showing fraud or corruption, plaintiff appears to retry his case by arguing that his receipt of unemployment benefits was proper and the Board's decision to endorse his dismissal was in error. Plaintiff appears to focus on every proceeding except the only relevant one, that before the Board, and he cloaks his disagreement with that forum's conclusion with specious allegations of fraud and corruption. Plaintiff's claim of fraud or corruption by the Labor Board is dismissed with prejudice.

Plaintiff next argues that the Board failed to comply with the Act and also violated his due process rights by not providing notice of the Board's hearing. Board decisions are reviewable "if they are violative of due process." O'Neill, 581 F.2d at 694. Section 153 First (j) requires a National Railroad Adjustment Board to "give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them," and applies with equal force to Public Law Boards. *Id.* at 695. An involved party who lacks notice of a Board proceeding may be deprived of a constitutional right. Hunter v. Atchison, 171 F.2d 594, 597 (7th Cir. 1948). Plaintiff was a party involved in the dispute because the Board adjudicated his rights and duties. *See* Burlington Northern, Inc. v. American Ry. Supervisors Asso., 527 F.2d 216, 220 (7th Cir. 1975).

But notice to the employee is not invariably required. In O'Neill, the court held that when an employee authorizes his union to represent him before the Board and "to receive any notices on his behalf, Section 153 First (j) does not require that actual notice be given to the individual employee." O'Neill, 581 F.2d at 695. And in Bates, 9 F.3d at 31, the court held that

notice of a hearing is not required if the employee waives his right to an oral hearing by communicating to the Board his intent to rely on written submissions.

It is unclear if either of these exceptions apply, and if the need for personal notice of the hearing was accordingly obviated. In a letter that the Union sent to plaintiff, along with the Board's decision, we learn that the claim was filed on plaintiff's behalf and submitted to the Board. Also, that after the Board denied plaintiff's claim, the Union told him that it was closing his file. This letter may trigger the O'Neill exception, but there is simply not enough information to determine whether that is truly the case. Thus, plaintiff's claim that he lacked notice of the hearing falls under section 153(q). And, given the generous treatment afforded to filings submitted by *pro se* parties, plaintiff has stated a claim that the Board failed to provide notice pursuant to section 153 First (j) and violated his due process rights.

## CONCLUSION

For the foregoing reasons, plaintiff may proceed *in forma pauperis* on his claim that the Public Law Board failed to provide notice of the hearing, but the remainder of his claims are dismissed with prejudice.[4]

JAMES B. MORAN
Senior Judge, U. S. District Court

May 16, 2005.

---

[4] Plaintiff should be advised that, if he were to prevail, the only relief that could be granted is a remand for another hearing before the Adjustment Board, not reinstatement.